IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROBERT PARDUE                                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 1:14-CV-290-KS-MTP

JACKSON COUNTY, MISSISSIPPI, *et al.*                           DEFENDANTS

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants in part, denies in part, and declines to address in part** the individual Defendants' Motion for Summary Judgment [84]; **grants in part, denies in part, and declines to address in part** Defendant Jackson County's Motion for Summary Judgment [87]; and **denies** Plaintiff's Motion for Partial Summary Judgment [115].

### I. BACKGROUND

The Court described the background of this case in previous opinions. *See Pardue v. Jackson County*, No. 1:14-CV-290-KS-MTP, 2015 U.S. Dist. LEXIS 53464, at *1-*2 (S.D. Miss. Apr. 23, 2015); *Pardue v. Jackson County*, No. 1:14-CV-290-KS-MTP, 2014 U.S. Dist. LEXIS 160563, at *1-*2 (S.D. Miss. Nov. 13, 2014). Plaintiff asserts a wide variety of claims arising from Defendants' investigation of his alleged possession of child pornography and the searches and seizures pursuant thereto. The Court previously dismissed Plaintiff's Section 1983 claims against the individual Defendants in their official capacities, freestanding Section 1983 malicious prosecution and abuse of process claims, Section 1985 claims, Section 1986 claims, Section 1983 failure-to-train claim against Defendant Byrd, and equal protection claims. The parties

filed cross-motions for summary judgment [84, 87, 115], which are ripe for review.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. Individual Defendants' Motion for Summary Judgment [84]

#### A. *Qualified Immunity, Generally*

Defendants argue, among other things, that they are entitled to qualified immunity against Plaintiff's claims. Before the Court addresses Plaintiff's various claims, it will provide a brief summary of the law applicable to this defense. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "Although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

There are two steps in the Court's analysis. First, the Court determines whether the plaintiff "has adduced sufficient evidence to raise a genuine issue of material fact suggesting [the defendant's] conduct violates an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Id.* The Court may address either step first. *Pearson*, 555 U.S. at 236. "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brumfield*, 551 F.3d at 326.

#### B. *Conceded Claims*

Plaintiff conceded his Fifth Amendment and Ninth Amendment claims.

3

Therefore, the Court grants Defendants' motion for summary judgment as to them. Plaintiff did not address Defendants' argument concerning potential defamation claims under federal law. To the extent Plaintiff pleaded such a claim, the Court assumes he conceded it and grants Defendants' motion for summary judgment in that respect.

## C.      *Section 1983 – Unreasonable Search – Thornton*

"The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015). "[R]easonableness is the ultimate touchstone of the Fourth Amendment." *Id.* "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006). But "the existence of a valid search warrant, issued by a neutral magistrate to search a home for criminal activity, establishe[s] probable cause" for a search. *Williams v. Kaufman County*, 352 F.3d 994, 1008 (5th Cir. 2003); *see also Michigan v. Summers*, 452 U.S. 692, 703, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981). Furthermore, "once facts supporting an arrest [or search] are placed before an independent intermediary . . . , the intermediary's decision breaks the chain of causation for [the alleged] constitutional violations." *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004). However, Section 1983 claims arising from such violations "may be maintained if the plaintiff affirmatively shows that the deliberations of that intermediary were in some way tainted by the actions of the defendants." *Id.*

One day before conducting the search at issue, Defendant Thornton obtained a search warrant [84-7] from a County Court judge who specifically found that there was

4

probable cause to search Plaintiff's home and computers for evidence of child pornography. Therefore, Thornton had probable cause to search Plaintiff's home and computers, and there was no unreasonable search in violation of the Fourth Amendment. *Summers*, 452 U.S. at 703; *Williams*, 352 F.3d at 1008.

1. *Existence of a Warrant*

Plaintiff raised several arguments attacking the validity of the search warrant. First, Plaintiff apparently argues that there was no search warrant. But the record contains a residential search warrant for the house, forensic search warrant for the computers, and supporting affidavits [84-7]. Thornton testified [84-3] that she had the warrants in hand when she conducted the search. These documents have been authenticated [128-1, 128-2], and Plaintiffs have not presented any evidence disputing their authenticity.

Plaintiff notes that the County Court file [121-4] does not contain a copy of the search warrant, and he provided an affidavit in which he stated that he "was never given a copy of or showed any search warrant . . . ." However, this assertion differs from Plaintiff's deposition testimony [119-9], where he testified that Thornton simply failed to show him a search warrant at the beginning of the search.

Even if Plaintiff's affidavit and the warrant's absence from the court file were evidence that the warrant did not exist, when a party's evidence "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not accept that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

5

Defendants produced the warrant and authenticated it, and Plaintiff has not provided any evidence to dispute the warrant's authenticity. Therefore, Plaintiff failed to create a genuine dispute of material fact on this issue.

### 2.  *Validity of the Warrant*

Next, Plaintiff argues that the search warrant was invalid because it was obtained using information acquired through a grand jury subpoena that violated applicable state law and court rules. It is undisputed that Defendant Thornton was assigned to the Internet Crimes Against Children ("ICAC") task force, and that she received notice through the Child Protection System software issued by the Attorney General's office that an IP ("internet protocol") address in Ocean Springs, Mississippi, had downloaded child pornography [95, 84-3, 84-4]. Thornton sent a grand jury subpoena [84-5] to the internet service provider ("ISP"), requesting its records related to the IP address. The ISP responded to the subpoena [87-6], representing that the IP address was assigned to a customer at Plaintiff's address in Ocean Springs, Mississippi. Thornton used this information to obtain search warrants [84-7] from Jackson County Court Judge Larry Wilson.

Plaintiff argues that the grand jury subpoena was improper because the grand jury did not actually issue it. In fact, it appears to be undisputed that the Jackson County Sheriff's Department's typical custom and practice in investigating IP addresses flagged by the ICAC notification system was to unilaterally have the clerk's office issue a grand jury subpoena without seeking the approval of the grand jury itself. According to Thornton's testimony [123-3, 123-10], when she received notice that child

pornography had been downloaded in Jackson County, she would fill in the relevant information on a grand jury subpoena form and have the clerk's office issue a grand jury subpoena, without ever submitting the subpoena to the grand jury for approval. In fact, Thornton testified [123-10] that she did not even know whether the grand jury was in session when she had subpoenas issued.

Plaintiff provided undisputed evidence that Thornton employed the same investigative process here [123-3] and in another case [123-10]. *See also Tuskan v. Jackson County*, 134 F. Supp. 3d 1041, 2015 U.S. Dist. LEXIS 129288, at *2 (S.D. Miss. 2015); *Pears v. Jackson County, Miss.*, No. 1:13-CV-402-HSO-RHW, 2015 U.S. Dist. LEXIS 129590, at *3 (S.D. Miss. Sept. 25, 2015). She testified [123-10] that this was the Department's "normal protocol," and that Captain Mick Sears instructed her to operate in this manner. Defendant also represented in briefing that this practice was approved by the District Attorney.

Plaintiff argues that the Department used this procedure to avoid the court oversight, notice, and hearing required by the Uniform Rules of Circuit and County Court. Rule 2.01 provides that "[n]o subpoena in a criminal case may require the production" of information "at a date and time or place other than the date, time and place at which the trial, hearing or proceeding at which these items are to be offered in evidence is scheduled to take place, unless the court has entered an order pursuant to this rule authorizing the issuance of such subpoena." URCCC 2.01(C)(1). The rule requires notice and a hearing before the subpoena can issue. URCCC 2.01(C)(2). However, Rule 2.01 specifically provides that it "shall not apply to proceedings before

7

a grand jury." URCCC 2.01.

Plaintiff contends that Thornton had no authority to issue a grand jury subpoena without seeking the approval of the grand jury. The Mississippi Supreme Court has described grand juries as "independent bod[ies] empowered with the authority to investigate potential crimes" with "broad investigative power and wide latitude to conduct an investigation . . . ." *Entergy Miss., Inc. v. State of Mississippi*, 132 So. 3d 568, 572 (Miss. 2014). But this authority is granted to the grand jury – not the law enforcement officials seeking an indictment:

> The grand jury is the body which decides whether to issue its subpoenas, whether they be subpoenas duces tecum, subpoenas ad testificandum, or both. Although the prosecuting attorney may bring information to the grand jury asking it to issue a subpoena duces tecum based upon information provided to the prosecutor or to the grand jurors . . . , the grand jury ultimately determines whether to issue that subpoena.

*Id.* at 574; *see also Turner v. State*, 573 So. 2d 657, 666 (Miss. 1990) (citing MISS. CODE ANN. § 13-5-63). The executive branch, through a "prosecuting attorney," may "provide[] legal advice and guidance," *Entergy*, 132 So. 3d at 574, but only at the grand jury's discretion. *Necaise v. Logan*, 341 So. 2d 91, 94 (Miss. 1976).

These authorities suggest that Plaintiff is correct insofar as he challenges Thornton's authority to unilaterally issue grand jury subpoenas without actually involving the grand jury. However, Plaintiff has not cited any legal authority – and the Court was unable to find any – holding that use of a procedurally defective grand jury subpoena constitutes a Fourth Amendment violation which taints the search warrant, search, and arrest flowing from the evidence obtained via the defective subpoena. In

fact, the Mississippi Supreme Court has specifically held that a violation of court rules does not necessarily constitute a constitutional violation. *Lawrence v. State*, 869 So. 2d 353, 355 (Miss. 2003). Therefore, in the absence of any legal authority indicating that this investigative practice is *constitutionally* defective, the Court declines to create new law and declare it to be so.[1]

Regardless, "a right is clearly established only where it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015). Even if the Court were to agree that Thornton's improper use of a grand jury subpoena violated Plaintiff's constitutional rights, such a right is not clearly established, and Thornton would be entitled to qualified immunity. Furthermore, even if the evidence obtained through the subpoena – Plaintiff's address – would be inadmissible at trial, "[a] magistrate . . . may determine probable cause from evidence inadmissible at trial to determine guilt." *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 405 (5th Cir. 1989). Accordingly, there was still sufficient indicia of probable cause to support the issuance of a search warrant.

3. *False Statement in Preliminary Hearing*

Plaintiff contends that Thornton made a false statement in his preliminary

---

[1] Plaintiff also argued that the subpoena was improperly served, and that it was improperly directed to a company outside the state of Mississippi for production of documents located outside the state of Mississippi. Assuming that Plaintiff is right, he failed to cite any authority indicating that such procedural defects raise constitutional concerns.

hearing. It is not clear whether Plaintiff contends this allegedly false statement had any bearing on the disputed investigation, search, and arrest. Regardless, Thornton obtained the grand jury subpoena [84-5] and sent it to the ISP on July 21, 2011. She applied for a search warrant [84-7] on July 27, 2011, and she executed the warrant, searched Plaintiff's home, and arrested him on July 28, 2011. The preliminary hearing [123-6] was over a month later – on September 12, 2011. Therefore, any false statements during the preliminary hearing are irrelevant to the constitutionality of the disputed investigation, search, and arrest.

    *4.    Departmental Policies and Procedures*

    Next, Plaintiff argues that the search warrant was invalid because it was based on information obtained via a grand jury subpoena that violated the Department's own policies and procedures. Section 4.05 [121-14] of the Department's Policies and Procedures provides:

**Legal Basis for Seeking a Search Warrant**
The following guidelines must be followed by all officials of the department when obtaining search warrants:

1.    Officers must be able to articulate probable cause to believe that specific evidence, contraband, or fruits of a crime may be found at a particular location.

2.    Any facts that establish probable cause must be clear and specific. Officers may not rely solely on personal opinion, unauthenticated third-party information, or hearsay. The officer bases all facts on:

    a.    Personal observation or knowledge; or
    b.    Information from a reliable source.

3.    When informants are used, particularly confidential informants, specific information should be provided on their reliability.

Plaintiff argues that Thornton had no facts to establish probable cause because she should not be permitted to rely on the information obtained via the grand jury subpoena.

Even if Plaintiff had demonstrated that Thornton had an insufficient basis for seeking a search warrant, violation of departmental policies and procedures is not necessarily a constitutional violation. *See Harris v. Payne*, 254 F. App'x 410, 416-17 (5th Cir. 2007). Regardless, Plaintiff has not provided any legal authority to support her argument that the information Thornton obtained via grand jury subpoena was constitutionally tainted. Furthermore, even if the even if the address obtained from the ISP were inadmissible, "[a] magistrate . . . may determine probable cause from evidence inadmissible at trial to determine guilt." *Bennett*, 883 F.2d at 405. Accordingly, Thornton's alleged violation of departmental policies and procedures does not render the search warrant invalid or taint the evidence obtained upon its execution.

### 5.   *Conclusion*

For the reasons above, the Court finds that Thornton searched Plaintiff's home pursuant to a "valid search warrant, issued by a neutral magistrate," and, therefore, she did not violate Plaintiff's Fourth Amendment right to be free from unreasonable searches. *Summers*, 452 U.S. at 703; *Williams*, 352 F.3d at 1008.

### D.   *Section 1983 – Seizure, False Arrest, False Imprisonment – Thornton*

Plaintiff's claims of unreasonable seizure, false arrest, and false imprisonment all arise from the Fourth Amendment right to be free from unreasonable seizure of one's person. *Deville*, 567 F.3d at 164. To prevail on such a claim, Plaintiff "must show

11

that [Thornton] did not have probable cause to arrest him." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Nunez-Sanchez*, 478 F.3d 663, 666 (5th Cir. 2007). The officer's knowledge must "establish that there was a 'fair probability' that a crime occurred." *Id.* at 666-667. A "fair probability" is "more than a bare suspicion, but need not reach the fifty percent mark. When considering what a reasonable person would have concluded, we take into account the expertise and experience of the law enforcement officials." *Id.* at 667. To be liable, the officers "must not be aware of facts constituting probable cause to arrest or detain the person for any crime." *Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015). "As applied in the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009).

First, Plaintiff may argue that Thornton violated his constitutional rights by detaining him while she searched his home. "[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705. As noted above, Defendant searched Plaintiff's home pursuant to a valid search warrant founded on probable cause. Therefore, her detention of Plaintiff while she executed the search warrant was constitutionally permissible.

As for Plaintiff's arrest, he primarily argues that there was no probable cause for his arrest because the evidence supporting it was obtained during execution of an invalid search warrant. However, as explained above, Thornton searched Plaintiff's home pursuant to a valid search warrant founded on probable cause.

Plaintiff may also argue that the search did not provide Thornton with probable cause to arrest him, but it is undisputed that Thornton discovered child pornography on Plaintiff's desktop computer. In Thornton's investigative report [95], she stated that Plaintiff admitted that he owned the computer, and that he was the only person in his household who used it. The child pornography was found under a user account for Plaintiff's grandson, but the grandson denied having downloaded it. Likewise, Plaintiff's grandson and granddaughter stated that they typically used their own laptops. Additionally, Plaintiff's grandson told Thornton that Plaintiff had been accused of molesting a child several years ago. According to Thornton's report, Plaintiff denied having downloaded child pornography or seeing the offending photos, but he said it was possible that child pornography had "just popped up" while he was viewing other types of pornography.

In his deposition [96], Plaintiff admitted that there was child pornography on his desktop computer, but he also stated that several people had access to the computer, including himself, his grandson, and the grandson's friends. In fact, he testified that his grandson and several friends had spent the night during March 2011, the time period when one of the offending images was downloaded. During his deposition, Plaintiff could not recall whether he told Thornton that his grandson's

friends had access to the computer, but in the affidavit [116-5] filed in response to Defendants' motions, he stated that he told Thornton "that the computer in our family room was primarily used by my grandchildren and their friends and was freely available for use by anyone that came to our house." He did *not* mention that his grandson's friends had access to the computer during the recorded interview [97] on the day of his arrest.

In the recorded interview [97], Plaintiff admitted that child pornography was on his computer. However, he denied having seen the images, and he denied that he "willingly . . . downloaded child pornography." He stated: "I may have done it, but it was by – it was by mistake. It may have been in a group of other things that was – that I was looking at at the time . . . ." When asked whether there were "questionable ages on the females or males" on the websites he frequented, he responded that "some looked young, but [he] didn't go there specifically for" child pornography. He said, "if there was a website that would have popped up and me not knowing about it, then I may have looked at it, but I went on." But he also stated that "on occasion, maybe once or twice" he viewed such images a second time. Plaintiff also admitted that his grandson frequently left his profile logged in, and that he "could have done anything" under his grandson's computer profile unwittingly.

After consideration of these facts and the totality of the circumstances preceding his arrest, the Court concludes that Thornton had probable cause to arrest Plaintiff for possession of child pornography. *Cf. United States v. Diaz*, 435 F. App'x 329, 331 (5th Cir. 2011) (where officers found child pornography from the internet on defendant's

computer, there was sufficient evidence to support a conviction for possession of child pornography);[2] *United States v. Hill*, 338 F. App'x 855, 858-59 (11th Cir. 2009) (fireman providing information that he saw child pornography on defendant's computer while responding to a call was sufficient to establish probable cause for arrest). At the very least, Thornton reasonably believed that she had probable cause to arrest Plaintiff for possession of child pornography, and she is entitled to qualified immunity. *See Tuskan*, 2015 U.S. Dist. LEXIS 129288 at *17-*18 (where officer had information indicating that an IP address at plaintiff's residence had downloaded child pornography, that was sufficient to establish arguable probable cause); *Peairs*, 2015 U.S. Dist. LEXIS 129590 at *49 (officer reasonably believed that probable cause existed to arrest plaintiff for possession of child pornography when, among other things, child pornography files were found on his computer during a lawful search). For these reasons, Plaintiff's Section 1983 claims of unreasonable seizure, false arrest, and false imprisonment fail.

## E.    *Section 1983 – Fourteenth Amendment Due Process – Thornton*

Plaintiff claims that Thornton violated his Fourteenth Amendment right to due process. According to Plaintiff's briefing, he apparently contends that Thornton violated his Fourteenth Amendment rights in the same manner she violated his Fourth Amendment rights: by searching his home and arresting him without probable cause or a valid warrant. For the same reasons provided above, the Court finds that Thornton had probable cause to search Plaintiff's home and to arrest him for possession of child

---

[2] "A showing of probable cause requires much less evidence than does a finding sufficient to convict." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988).

pornography. Therefore, to the extent Plaintiff's Fourteenth Amendment claim is predicated on those actions, it fails.

**F.    *Section 1983 – Byrd***

Defendants argue that Byrd can not be liable under Section 1983 because there is no evidence that he was personally involved in any of the alleged constitutional violations. "Under § 1983, a supervisory official may be held liable only if (1) [he] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [he] implements unconstitutional policies that causally result in the constitutional injury." *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). The Court need not address Byrd's involvement in the actions described above insofar as it has found that Plaintiff's constitutional claims against Thornton fail. Even if Byrd affirmatively participated in Thornton's actions or implemented the policies which led to them, he did not violate Plaintiff's constitutional rights.

**G.    *State Law Claims***

*1.    Waiver of Defenses*

Plaintiff argues that Defendants waived the affirmative defenses of statute of limitations and immunity under the Mississippi Tort Claims Act ("MTCA") by failing to assert them until they filed dispositive motions. "According to Rule 8(c)(1), a litigant must in his responsive pleading 'affirmatively state any avoidance or affirmative defense.' Failure to follow the rule can lead to waiver of the defense." *Solomon v. Spalitta*, 484 F. App'x 883, 884-85 (5th Cir. 2012). In their Answer [15] Defendants pleaded "all applicable statutes of limitation," as well as "all protections, immunities,

16

limitations, defenses, procedures, exemptions, and rights available under MISS. CODE ANN. § 11-46-1, *et. seq.*" Accordingly, they did not waive the statutes of limitation or MTCA.[3]

2.   *False Arrest*

Defendants argue that any state-law false arrest claim asserted by Plaintiff is barred by the applicable statute of limitations. The statute of limitations for a claim of false arrest is one year after the claim accrues. MISS. CODE ANN. § 15-1-35; *Smith v. Hancock County*, No. 1:14-CV-466-KS-MTP, 2015 U.S. Dist. LEXIS 129286, at *3 (S.D. Miss. Sept. 25, 2015). A claim of false arrest accrues on the day of arrest. *Hagan v. Jackson County*, No. 1:13-CV-268-HSO-RHW, 2014 U.S. Dist. LEXIS 138678, at *38 (S.D. Miss. Sept. 30, 2014); *City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1217-18 (Miss. 1990). Plaintiff was arrested on July 28, 2011. He filed this lawsuit on July 25, 2014 – almost three years after the cause of action accrued. Therefore, his state-law false arrest claim is barred by the applicable statute of limitations.[4]

3.   *Abuse of Process*

Defendants argue that they are entitled to immunity under the MTCA against

---

[3]Plaintiff cites a number of Mississippi cases in support of his waiver argument, but "the Federal Rules of Civil Procedure (FRCP) govern the manner and time in which defenses are raised and when waiver occurs." *Lee v. United States*, 765 F.3d 521, 523 (5th Cir. 2014).

[4]The Court also notes that a claim of false arrest under Mississippi law arises "when one causes another to be arrested falsely, unlawfully, maliciously and without probable cause." *Johnson*, 562 So. 2d at 1218. The Court found above that Thornton had probable cause to arrest Plaintiff for possession of child pornography.

Plaintiff's abuse of process claim insofar as the actions complained of were within the course and scope of their employment. Under the MTCA, "no employee may be held personally liable for acts or omissions occurring within the course and scope of the employee's duties," but an employee is "not . . . considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." MISS. CODE ANN. § 11-46-7(2).

The elements of abuse of process are: "(1) that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity." *Williamson v. Keith*, 786 So. 2d 390, 394 (Miss. 2001). Unless an abuse of process claim does not, by definition, constitute "fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations," MISS. CODE ANN. § 11-46-5(2), it may arise from malicious conduct and be excluded from the MTCA's grant of immunity for actions within the course and scope of employment. *See Holloway v. Lamar County*, No. 2:15-CV-86-KS-MTP, 2015 U.S. Dist. LEXIS 168119, at *5 (S.D. Miss. Dec. 16, 2015); *Hagan*, 2014 U.S. Dist. LEXIS 138678 at *37. The parties have insufficiently briefed this issue, and Plaintiff has not clearly stated what actions constitute the abuse of process. Therefore, the Court does not presently have sufficient basis for a ruling on the application of MTCA immunity to Plaintiff's abuse

of process claim.

Defendants also argue that the abuse of process claim is time-barred. The statute of limitations for abuse of process is one year after the claim accrues. *Suthoff v. Yazoo County Industrial Dev. Corp.*, 722 F.2d 133, 136 (5th Cir. 1983); *Harried v. Krutz*, 813 F. Supp. 2d 835, 840 (S.D. Miss. 2011). "A cause of action for abuse of process . . . accrues at the termination of the acts which constituted the abuse complained of, and not from the completion of the action which the process issued . . . ." *Harried*, 813 F. Supp. 2d at 841. Plaintiff has not clearly delineated the actions underlying his abuse of process claim. Regardless, he filed this action on July 25, 2014. Therefore, to the extent his abuse of process claim arises from actions occurring before July 25, 2013, the claim is time-barred. To the extent his abuse of process claim arises from actions occurring on or after July 25, 2013, it is not time-barred.[5]

### 4. IIED

Defendants argue that they are entitled to MTCA immunity against Plaintiff's claim for intentional infliction of emotional distress. To the extent this claim is predicated upon actions that constitute "fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations," MISS. CODE ANN. § 11-46-5(2), it

---

[5]Additionally, the Court notes that courts in this state have ruled that a finding of probable cause defeats a claim of abuse of process. *See Harrison v. Yalobusha County*, No. 3:09-CV-106-SA-JAD, 2010 U.S. Dist. LEXIS 107161, at *42-*43 (N.D. Miss. Oct. 5, 2010); *Woods v. Spellman*, No. 4:07-CV-SA-DAS, 2010 U.S. Dist. LEXIS 61538, at *16 (N.D. Miss. June 22, 2010); *Croft v. Grand Casino Tunica, Inc.*, 910 So. 2d 66, 76 (Miss. Ct. App. 2005); *but see Hyde Constr. Co. v. Koehring Co.*, 387 F. Supp. 702, 714 (N.D. Miss. 1974) (questions of probable cause are irrelevant to an abuse of process claim).

does not arise from actions within the course and scope of Defendants' employment. *See Franklin Collection Servs. v. Kyle*, 955 So. 2d 284, 290 (Miss. 2007); *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (Miss. Ct. App. 2011); *Holloway*, 2015 U.S. Dist. LEXIS 168119 at *14. But Plaintiff has not specified the actions from which his intentional infliction of emotional distress claim arises. Therefore, the Court does not presently have sufficient basis for a ruling on the application of MTCA immunity to Plaintiff's intentional infliction of emotional distress claim.

Defendants also argue that the claim for intentional infliction of emotional distress is time-barred. The statute of limitations for intentional infliction of emotional distress is one year after the claim accrues. MISS. CODE ANN. § 15-1-35; *Trustmark Nat'l Bank v. C. Brent Meador*, 81 So. 3d 1112, 1118 (Miss. 2012). A claim for intentional infliction of emotional distress accrues on the date upon which the intentional acts forming the basis of the claim occurred. *Citifinancial Mortg. Co. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007). Plaintiff filed this action on July 25, 2014. Therefore, to the extent his intentional infliction of emotional distress claim arises from actions occurring before July 25, 2013, the claim is time-barred. To the extent his intentional infliction of emotional distress claim arises from actions occurring on or after July 25, 2013, it is not time barred.

### 4.    *Defamation*

Defendants argue that Plaintiff's defamation claim is time-barred. Claims for defamation are subject to a one-year statute of limitations. MISS. CODE ANN. § 15-1-35; *Southern v. Miss. State Hosp.*, 853 So. 2d 1212, 1213-14 (Miss. 2003). A defamation

claim accrues on the date the allegedly defamatory material is published to a third person or to the public at large . . . ." *Lane v. Strang Communs. co.*, 297 F. Supp. 2d 897, 900 (N.D. Miss. 2003); *see also Fairley v. ESPN, Inc.*, 879 F. Supp. 2d 552, 554-55 (S.D. Miss. 2012). Plaintiff filed this action on July 25, 2014. Therefore, to the extent his defamation claim arises from statements published before July 25, 2013 – including statements made by Defendants in the July 29, 2011, news article Plaintiff attached as an exhibit [116-11, 121-11, 123-11] – the claim is time-barred. To the extent his defamation claim arises from statements published on or after July 25, 2013, it is not time-barred.

    *5.   Malicious Prosecution*

Among other things, Defendants argue that Plaintiff's malicious prosecution claim fails because there was probable cause to search his home and arrest him for possession of child pornography. To prove a claim of malicious prosecution, Plaintiff must demonstrate:    "(1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the insistence of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of." *Bearden v. Bellsouth Telcoms., Inc.*, 29 So. 3d 761, 764 (Miss. 2010).

Plaintiff has not specified the actions from which his malicious prosecution claim arises. The Court has already found that Defendants had probable cause to search Plaintiff's home and to arrest him for possession of child pornography. To the extent

Plaintiff's malicious prosecution claim is predicated upon those actions it is granted. To the extent the malicious prosecution claim arises from other actions, the Court can not presently address it.

## H.   *Punitive Damages*

Defendants argue that Plaintiff's claims for punitive damages should be dismissed. The Court has already granted summary judgment as to Plaintiff's federal claims, and it is presently unclear which state-law claims remain. Until Plaintiff clarifies the nature of any remaining state-law claims, the Court declines to address the effect of MISS. CODE ANN. § 11-46-15(2).

## IV. JACKSON COUNTY'S MOTION FOR SUMMARY JUDGMENT [87]

## A.   *Section 1983*

Among other things, Defendant Jackson County argues that it can not be liable under Section 1983 because Plaintiff has not provided any evidence that his constitutional rights were violated. To establish a Section 1983 claim, a plaintiff must provide evidence (1) of the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Additionally, "to hold a municipality liable under § 1983, the plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom." *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015).

For the reasons provided in the Court's analysis of the individual Defendants'

Motion for Summary Judgment [84], it finds that Plaintiff failed to create a genuine dispute of material fact as to whether any constitutional violation actually occurred. Specifically, the Court finds that Defendant had probable cause to search Plaintiff's home and to arrest him for possession of child pornography. Therefore, the Court grants Jackson County's motion as to any Section 1983 claims asserted against it by Plaintiff.

### B.   *State-Law Claims*

#### 1.   *Waiver of Defenses*

Plaintiff argues that Defendant waived all affirmative defenses to its state-law claims. The Court rejects that argument for the same reasons provided above.

#### 2.   *False Arrest*

Defendant argues that any state-law false arrest claim is time-barred. For the same reasons provided above, the Court agrees and grants Defendant's motion as to any false arrest claim asserted under state law.

#### 3.   *Abuse of Process*

Defendant argues that it is immune from liability for Plaintiff's abuse of process claim. As explained above, Plaintiff failed to delineate the specific actions which underlie his abuse of process claim, and abuse of process may or may not involve "fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations." MISS. CODE ANN. § 11-46-5(2). Therefore, the Court is unable to assess the applicability of the MTCA to Plaintiff's abuse of process claim.

Defendant also argues that Plaintiff's abuse of process claim is time-barred. For

the same reasons provided above, the Court holds that Plaintiff's abuse of process claim is time-barred to the extent it arises from actions occurring before July 25, 2013. But to the extent his abuse of process claim arises from actions occurring on or after July 25, 2013, it is not time-barred.

4.   *Malicious Prosecution*

Defendant argues that it is immune from liability for Plaintiff's malicious prosecution claim. The MTCA waived Defendant's sovereign immunity "from claims for money damages arising out of torts of . . . governmental entities and the torts of their employees while acting within the course and scope of their employment . . . ." MISS. CODE ANN. § 11-46-5(1). But "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." MISS. CODE ANN. § 11-46-5(2). "Malice" is an element of malicious prosecution, and, therefore, Defendant has not waived its sovereign immunity with respect to Plaintiff's malicious prosecution claim. *Holloway v. Lamar County*, No. 2:15-CV-86-KS-MTP, 2015 U.S. Dist. LEXIS 168119, at *13 (S.D. Miss. Dec. 16, 2015); *Rogers v. City of Tupelo*, No. 1:13-CV-243-SA-DAS, 2015 U.S. Dist. LEXIS 69760, at *29 n. 2 (N.D. Miss. May 29, 2015); *Dozier v. City of Purvis*, No. 2:11-CV-46-KS-MTP, 2012 U.S. Dist. LEXIS 129677, at *4-*5 (S.D. Miss. Sept. 12, 2012).

5.   *Intentional Infliction of Emotional Distress*

24

Defendant argues that it is immune from liability for Plaintiff's intentional infliction of emotional distress claim. As explained above, Plaintiff failed to delineate the specific actions which underlie this claim, and intentional infliction of emotional distress may or may not involve "fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations." MISS. CODE ANN. § 11-46-5(2). Therefore, the Court is unable to assess the applicability of the MTCA to Plaintiff's claim of intentional infliction of emotional distress.

Defendant also argues that the intentional infliction of emotional distress claim is time-barred. For the same reasons provided above, the Court holds that the intentional infliction of emotional distress claim is time-barred to the extent it arises from actions occurring before July 25, 2013, but it is not time-barred to the extent it arises from actions occurring on or after July 25, 2013.

*6.    Defamation*

Defendant argues that it is immune from liability for Plaintiff's defamation claim. The MTCA waived Defendant's sovereign immunity "from claims for money damages arising out of torts of . . . governmental entities and the torts of their employees while acting within the course and scope of their employment . . . ." MISS. CODE ANN. § 11-46-5(1). But "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." MISS. CODE ANN. § 11-46-5(2). Therefore,

25

Defendant has not waived its sovereign immunity with respect to Plaintiff's defamation claim.

       *7.*    *Notice of Claim*

Defendant also argues that Plaintiff failed to provide a notice of claim as required by MISS. CODE ANN. § 11-46-11(1)-(2). Plaintiff did not address this argument in briefing. Therefore, the Court assumes that Plaintiff does not dispute that he failed to provide a notice of claim. The Mississippi Supreme Court "strictly applies the ninety-day requirement of Section 11-46-11(1)." *Gorton v. Rance*, 52 So. 3d 351, 358 (Miss. 2011). It "is a hard-edged, mandatory rule which the Court strictly enforces." *Id.*; *see also Lee v. Ishee*, 383 F. App'x 499, 501 (5th Cir. 2010). Accordingly, Plaintiff's state-law claims against Jackson County that fall within the scope of the MTCA are barred.

## C.   *Punitive Damages*

Finally, Defendant argues that it can not be liable for punitive damages under Section 1983. The Court has already granted summary judgment as to Plaintiff's Section 1983 claims against Defendant. Regardless, Defendant is correct. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 2758, 69 L. Ed. 2d 616 (1981). Defendant also argues that it can not be liable for punitive damages under Mississippi law. Again, Defendant is correct. MISS. CODE ANN. § 11-46-15(2). Therefore, the Court grants Defendant's motion as to any punitive damages claim asserted by Plaintiff.

## V. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [115]

Plaintiff filed a Motion for Partial Summary Judgment ]116] as to Defendants'

liability. First, he seeks a ruling from the Court that the grand jury subpoena used by Defendant Thornton violated Mississippi law. As noted above, Mississippi law suggests that Plaintiff is correct insofar as he challenges Thornton's authority to unilaterally issue grand jury subpoenas without actually involving the grand jury. However, the key issue is whether use of a procedurally defective grand jury subpoena is a constitutional violation tainting the search warrant, search, and arrest flowing from the evidence obtained via the defective subpoena. Plaintiff cited no legal authority on this issue, and the Court was unable to find any. Therefore, in the absence of any legal authority indicating that this investigative practice is *constitutionally* defective, the Court declines to create new law and declare it to be so. Regardless, it is beyond dispute that this hypothetical constitutional right was not clearly established, and the individual Defendants are entitled to qualified immunity.

Plaintiff also seeks a ruling from the Court that the search of his home and his arrest for possession of child pornography violated his constitutional rights. He contends that Defendant Thornton had no probable cause to search his home or arrest him, and that he is entitled to summary judgment on his Section 1983 claims for false arrest and illegal search and seizure. He further argues that Jackson County is liable for Defendant Thornton's actions. For the same reasons provided above, the Court finds that Defendants had probable cause to search Plaintiff's home and arrest him for possession of child pornography. Therefore, the Court denies his motion for partial summary judgment.

### VI. CONCLUSION

For the reasons above, the Court **grants in part, denies in part, and declines to address in part** the individual Defendants' Motion for Summary Judgment [84]. Specifically:

- The Court grants the motion as to Plaintiff's Section 1983 claim arising from the alleged deprivation of rights secured by the Fifth Amendment and Ninth Amendment, as well as any federal defamation claim that Plaintiff may have asserted.

- The Court grants the motion as to Plaintiff's Section 1983 claim arising from the alleged deprivation of his Fourth Amendment right to be free from unreasonable searches.

- The Court grants the motion as to Plaintiff's Section 1983 claim arising from the alleged deprivation of his Fourth Amendment right to be free from unreasonable seizures, false arrest, and false imprisonment.

- The Court grants to the motion as to Plaintiff's Section 1983 claim arising from the alleged deprivation of his Fourteenth Amendment right to due process.

- The Court grants the motion as to Plaintiff's state-law claim of false arrest.

- The Court grants the motion as to Plaintiff's state-law claim of abuse of process to the extent it arises from actions occurring before July 25, 2013, but the Court denies the motion to the extent the abuse of process claim arises from actions occurring on or after July 25, 2013. The Court presently declines to address the applicability of the MTCA to Plaintiff's abuse of process claim.

- The Court grants the motion as to Plaintiff's intentional infliction of emotional distress claim to the extent it arises from actions occurring before July 25, 2013, but the Court denies the motion to the extent the intentional infliction of emotional distress claim arises from actions occurring on or after July 25, 2013. The Court presently declines to address the applicability of the MTCA to Plaintiff's intentional infliction of emotional distress claim.

- The Court grants the motion as to Plaintiff's defamation claim to

28

the extent it arises from statements published before July 25, 2013, but the Court denies the motion to the extent the defamation claim arises from statements published on or after July 25, 2013.

- The Court grants the motion as to Plaintiff's malicious prosecution claim arising from the search of Plaintiff's home and his arrest for possession of child pornography.

- The Court presently declines to address the motion with respect to Plaintiff's claim for punitive damages.

Additionally, the Court **grants in part, denies in part, and declines to address in part** Defendant Jackson County's Motion for Summary Judgment [87]. Specifically:

- The Court grants the motion as to Plaintiff's Section 1983 claims.

- The Court grants the motion as to Plaintiff's state-law false arrest claim.

- The Court grants the motion as to Plaintiff's state-law abuse of process claim to the extent it arises from actions occurring before July 25, 2013, but it denies the motion to the extent the abuse of process claim arises from actions occurring on or after July 25, 2013. The Court presently declines to address the applicability of the MTCA to Plaintiff's abuse of process claim.

- The Court grants the motion as to Plaintiff's state-law malicious prosecution claim.

- The Court grants the motion as to Plaintiff's intentional infliction of emotional distress claim to the extent it arises from actions occurring before July 25, 2013, but it denies the motion to the extent the intentional infliction of emotional distress claim arises from actions occurring on or after July 25, 2013. The Court presently declines to address the applicability of the MTCA to Plaintiff's intentional infliction of emotional distress claim.

- The Court grants the motion as to Plaintiff's defamation claim.

- The Court grants the motion with respect to Plaintiff's state-law

29

claims falling within the scope of the MTCA, as Plaintiff failed to provide the required notice of claim.

- The Court grants the motion with respect to Plaintiff's claim for punitive damages.

The Court also **denies** Plaintiff's Motion for Partial Summary Judgment [115] as to liability for the reasons provided in its discussion of Defendants' motions.

Finally, Plaintiff filed a twenty-nine page Complaint [1]. On the surface, it appears that he asserted ten "Counts," or causes of action. However, within each "Count," Plaintiff's counsel listed multiple sections of the Constitution, multiple federal statutes, and multiple constitutional rights which Defendants allegedly violated. Counsel neither delineated which claims were asserted against which Defendants, nor provided the specific factual basis of each claim. When confronted with a pleading this imprecise, the Court relies on the parties' briefing to narrow the legal and factual issues and bring the case into focus. While Plaintiff's counsel conceded some of the Complaint's superfluity in briefing, he failed to bring his client's claims into focus by clearly stating the specific causes of action asserted, the specific actions upon which each claim was predicated, or the specific Defendants against whom each claim was asserted. As noted above, this prevented the Court from being able to address some of Defendants' summary judgment arguments.

The Court has repeatedly admonished attorneys for a "shotgun approach to pleadings," in which one "heedlessly throws a little bit of everything into his complaint in the hopes that something will stick." *S. Leasing Partners, Ltd. v. McMullen*, 801

F.2d 783, 788 (5th Cir. 1986).[6] In fact, the Court recently sanctioned an attorney for vexatiously multiplying proceedings with shotgun pleading and argumentation. *See Payne v. Univ. of S. Miss.*, No. 1:12-CV-41-KS-MTP, 2015 U.S. Dist. LEXIS 42118, at *9-*15 (S.D. Miss. Mar. 31, 2015).

The Eleventh Circuit astutely described the problems that "shotgun pleading" causes:

> If the trial judge does not quickly demand repleader, all is lost – extended and aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits. Given the massive record and loose pleadings before it, the trial court, whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials; the case therefore proceeds to trial without proper delineation of issues, as happens frequently. An appeal ensues, and the court of appeals assumes the trial court's responsibility of sorting things out. The result is a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the courts' ability to administer justice.

*Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (punctuation, internal citations omitted). The Fifth Circuit has observed that "shotgun pleading" of this sort treads dangerously close to Rule 11 territory. *McMullan*, 801 F.2d at 788 ("If Rule 11 is to mean anything and we think it does, it must mean an end to such expeditionary pleadings."); *see also Paylor v. Hartford Fire*

---

[6] *See, e.g. Ducksworth v. Rook*, No. 2:14-CV-146-KS-MTP, 2015 U.S. Dist. LEXIS 20563, at *14-*16 (S.D. Miss. Feb. 20, 2015); *Payne*, 2014 U.S. Dist. LEXIS 22052 at *5 n. 3; *Ward v. Life Investors Ins. Co. of Am.*, 383 F. Supp. 2d 882, 889 (S.D. Miss. 2005); *Austin v. Bayer Pharms. Corp.*, No. 5:13-CV-28-KS-MTP, 2013 U.S. Dist. LEXIS 137480, at *5 n. 1 (S.D. Miss. Sept. 25, 2013); *BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, No. 2:11-CV-136-KS-MTP, 2012 U.S. Dist. LEXIS 24420, at *27 (S.D. Miss. Feb. 27, 2012).

*Ins. Co.*, 748 F.3d 1117, 1125-28 (11th Cir. 2014) (decrying shotgun pleading and the "discovery goat rodeo" that inevitably follows it).

Vague, imprecise "shotgun" pleading clouds the legal and factual issues in a case. At best, it indicates an attorney's failure to fully analyze the case and adopt a coherent defense or theory of liability. At worst, it constitutes intentional obfuscation. Regardless of the attorney's motivation, it escalates the cost of litigation for both the parties and the Court, requiring voluminous discovery and motions to pinpoint the specific issues for trial – a task that Rule 11 requires attorneys to perform, to some degree, before they file a pleading. *See* FED. R. CIV. P. 11(b)(2). The Court advises Plaintiff's counsel to be mindful of this admonition in future proceedings.

SO ORDERED AND ADJUDGED this 25th day of May, 2016.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE